Opinion of the Court by
Judge Owsley.
[Absent Chief Justice Bibb.]
To obtain a surrender of the legal title to the land in contest, which is held by the heirs of Thomas Daugherty, deceased, under an adverse claim, Thompson exhibited his bill in equity, claiming the superior equity under the following entry:
February 9th, 1780, John Lutrill enters four hundred acres, by virtue of a certificate, &c. lying on the westwardly and south westwardly line of the lands belonging to the town of Boonsborough.
Before the date of this entry, Boonsborough had been settled, and when the entry was made it was a place, of general notoriety; but there is no evidence in the cause conducing to prove that the land belonging to the town had been abutted and bounded by actual survey at the date of the entry.
Decree of the circuit court.
Act of Virginia reserving lands for the towns in Kentucky.
Extract from the act.
The entry of Lutrill, was, however, sustained by the court below, and directed to be surveyed to adjoin two lines of the, land belonging to the town of Boonsborough, as it appeared on the hearing of the cause to be surveyed; and the heirs of Daugherty were decreed to convey to Thompson so much of the land in contest as was found to be common to the survey of Lutrill’s entry, as actually made, and a survey made in conformity to the opinion of the court directing the entry to be surveyed.
If the entry of Lutrill can be sustained, it is perperfectly dear that it must derive its support from something else than the survey, which by the decree of the court below it is directed to adjoin. For, without evidence of the survey having been previously made, we cannot presume it was made before the date of the entry, and if not then made, no proposition is more clear than that it cannot have been the object intended to be adjoined by the maker of Lutrill’s entry.
But before the entry was made, the legislature of Virginia, had, by an act of 1779, reserved six hundred and forty acres of land, to be laid off for the purpose of certain towns therein described; and as Boonsborough is one of the places coming within the provisions of that act, it may be contended, that although the survey afterwards made, may not in itself uphold the entry, it should be sustained by making it adjoin the six hundred and forty acres reserved for Boonsborough by the act.
The act provides, that “Whereas, several families for their greater safety, have settled themselves in villages or townships, under some agreement between the inhabitants for laying off the same into town lots, to be divided among them, and have, from present necessity, cultivated a piece of ground adjoining thereto in common:—Be it enacted, That six hundred and forty acres of land, whereon such villages or towns are situate, and to which no other person hath a previous legal claim, shall not be entered for, or surveyed, but shall he reserved for the *71 use and benefit of the said inhabitants until a true representation of their case can be made to the general assembly, that right and justice may be done them.”
An entry calling to adjoin a town before the 640 acres had been surveyed, cannot be laid down upon the lines afterwards surveyed for the boundary of the town.
The act contemplated no certain figures for the towns.
The six hundred and forty acres reserved by the act, may, with propriety, be said to belong to the several towns coming within the description therein given, and as Boonsborough falls within that description, and is not proved to have had any other land at the date of Lutrill’s entry, the call for the westwardly and south-westwardly line of the lands belonging to the town of Boonsborough, contained in the entry, must be understood to allude to the land reserved by the act for Boonsborough. It is true, that until surveyed, the six hundred and forty acres reserved for the town, can have no visible line to be adjoined, but it must, nevertheless, before it was surveyed, have had lines in contemplation of law. So that if the entry of Lutrill can be sustained, it must be made to adjoin the constructive lines of the land reserved by the act, and not the lines of the survey which were made after the date of the entry.
But is it true that the land reserved for towns, has assigned to it by the act, such a certain and fixed position, as to uphold an entry having for its support no other locative call than to adjoin the lines of the town land? This question must, we apprehend, according to any fair construction which can be put upon the act, be answered in the negative. If the act had done nothing more than provide a general reservation of six hundred and forty acres, to include the town, it might, in analogy to the rules which have been applied by repeated adjudications in the construction of entries be plausibly contended that the town land should form a square with lines to the cardinal points, including the town in the centre. But a slight attention to the provisions of the act will demonstrate, that by making the reservation for towns the Legislature cannot have intended to fix the exact boundary of the land reserved, or direct the figure it should assume. The town must, it is true, according to the act, he included by *72 the six hundred and forty acres reserved; but that may be done, and yet the land may be made by actual survey, to assume as many different figures as it is possible to imagine; and not only so, but what is conclusive against construing the act to have given shape to, and defined the precise location of the six hundred and forty acres reserved, there is no possible figure for the land to assume, which might not, in its application to the various towns provided for by the act, conflict with the prior rights of others, contrary to what is expressly forbiden by the provisions of the act. It was “land to which no other person had a previous legal claim,” that was, by the act reserved for the use of towns, and no construction should be indulged, that might in its practical operation, produce a collision between the land reserved for towns and the prior claims of others. To the contrary the previous legal claims of others, must, in construing the act, he regarded and preserved, and in doing so, we are necessarily compeled to maintain that the act has assigned to the town land no precise and fixed position.
Hence a call to adjoin such a town, (having no boundary) is not a sufficient call to give the entry position.
Breck, for plaintiff.
It follows, therefore, that the entry of Lutrill cannot be sustained, and consequently, Thompson, who claims under that entry, has no cause to complain of the decree being prejudicial to him.
Other points were relied on by the counsel of Thompson, but they are so obviously against him, that we have not deemed them worthy of particular notice.
The decree must be affirmed with cost.